UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

E.D.C. TECHNOLOGIES, INC.,
    Plaintiff,

v.

JIM SEIDEL, et al.,
    Defendants.

Case No. 16-cv-03316-SI

**ORDER ON SEIDEL MOTION TO DISMISS**

Re: Dkt. No. 18

Defendants Jim Seidel and Seidel Associates, LLC d/b/a GreenBox Energy have noticed the present motion for a September 9, 2016 hearing. Dkt. No. 18. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court will GRANT in part and DENY in part defendants' motion to dismiss plaintiff's complaint.[1]

**BACKGROUND**

Plaintiff E.D.C. Technologies, Inc. ("EDC") is a creator of an internet-based remote monitoring hot water management system that allows customers to monitor, configure, and actively manage their hot water systems. *See* Compl. (Dkt. No. 1) ¶¶ 16, 18. Defendant Jim Seidel is the former Vice President of Sales and Marketing of EDC. *Id.* at ¶¶ 1, 5. Seidel is the nephew of EDC's founder, Terry Pfaff. *Id.* at ¶ 53. Defendant Seidel Associates, LLC d/b/a GreenBox Energy is a competing business Seidel allegedly created while employed by EDC. *Id.* at ¶¶ 8-9, 78. Defendant Jason Pavlos is the former lead operations technician for EDC. *Id.* at ¶ 6,

---

[1] Defendant Pavlos has also filed a separate motion to dismiss. Dkt. No. 28. This order does not address Pavlos' motion.

Northern District of California

58, 84. Defendant Fred Klinzmann was an independent contractor turned employee for EDC during the relevant time period, but has since been dismissed from the case. *See id.* at ¶¶ 7, 61, 63; Pl. Voluntary Dismissal (Dkt. No. 24).

The complaint alleges that Seidel was the person most knowledgeable and most in control of EDC's technology development. *See* Compl. (Dkt. No. 1) ¶ 55. EDC alleges that, over time, Seidel's knowledge allowed him to hold EDC "hostage" because no one else was as conversant in many of the critical processes he created for EDC, which he refused to document or explain. *Id.* at ¶ 57. Seidel is alleged to have effectively concealed the nature and extent of the software and technology being developed by his team (which included Pavlos and Klinzmann) from Pfaff and the rest of EDC. *Id.* at ¶¶ 57, 58, 61, 62.

In early 2014, EDC attempted to establish and grow new business in Hawaii, and Pfaff put Seidel in charge of sales and marketing. *Id.* at ¶ 73. Sales were disappointing, and, during the fall of 2014, Seidel failed to close a single sale. *Id.* When questioned about the status of the project by Pfaff, Seidel rebuffed inquiries and was reluctant to allow access to EDC's systems operations. *Id.* Instead, Seidel took steps to start his own competing business, allegedly while still employed at EDC. *Id.* at ¶ 78. An attempt by Pfaff to work out an EDC distributorship with Seidel in Hawaii failed. *Id*. at ¶ 80-81.

Pfaff ultimately terminated Seidel's employment. *Id.* at ¶ 81. Seidel then allegedly deleted all of his emails on the EDC web-hosted email system and on the EDC laptop that was issued to him. *Id.* Seidel did not immediately return the laptop. *Id.* EDC was unable to access its accounts and Seidel refused to divulge passwords required to access them, insisting on the payment of severance as a condition of disclosing the password(s). *See id.* at ¶ 82. Seidel allegedly accessed and copied confidential information from EDC's networks and accounts and encouraged EDC employees to leave the company and compete against it. *Id.* at ¶ 83.

Seidel then started an EDC competitor company, GreenBox Energy ("GreenBox"), which is allegedly using EDC's hot water management system technology. *Id.* at ¶¶ 88, 89. GreenBox is alleged to have solicited numerous EDC customers and successfully diverted customers from EDC, irreparably harming EDC. *Id.* at ¶ 90.

In this action, EDC sues Seidel, Seidel Associates, GreenBox, and Pavlos, alleging federal question jurisdiction pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Stored Communications Act, 18 U.S.C. §§ 2701, 2707 (Counts 1-2) in addition to various other California causes of action (Counts 3-11).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether plaintiff has stated a claim upon which relief can be granted, the court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The court, for example, need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, the court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the court may take judicial notice of "matters of public record," such as prior court proceedings. *Id.* at 688-89. The court may also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). If the court dismisses the complaint, it must then

3

decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

For allegations of fraud or mistake, a complaint must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Fraud or mistake can be averred specifically, or by alleging facts that necessarily constitute fraud, unilateral mistake, or mutual mistake (even if those terms are not explicitly stated). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Rule 9(b) is satisfied if the allegations "identif[y] the circumstances constituting fraud (or mistake) so that the defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess*, 317 F.3d at 1103.

## DISCUSSION

Seidel challenges EDC's complaint on a variety of grounds. The Court will address these arguments in turn.

### I. Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") (Count 1)

EDC alleges numerous causes of action against Seidel under the CFAA, pursuant to 18 U.S.C. § 1030(a)(2)(C); 18 U.S.C. § 1030(a)(4), 18 U.S.C. § 1030(a)(5)(A)-(C); and 18 U.S.C. § 1030(a)(6)(A). Compl. (Dkt. No. 1) ¶¶ 95-109. Seidel asserts that EDC's claims are but formulaic recitations of the statutory elements and fail to meet the standard set forth in *Twombly*. Mot. (Dkt. 18) at 9. The Court disagrees.

The CFAA imposes criminal liability for a range of offenses involving unauthorized access or damage to computers and information systems, both public and private. *See* 18 U.S.C. § 1030;

*see also Facebook, Inc. v. Power Ventures, Inc.*, No. 13-17102, 2016 WL 3741956, at *5 (9th Cir. July 12, 2016) ("The CFAA prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use."). Anyone who suffers damage or loss as a result of a CFAA violation may bring a civil action, provided that such violation caused, for example, at least $5,000 in aggregate "loss" during a one-year period. 18 U.S.C. § 1030(g); *id.* § 1030(c)(4)(A)(i)(I)-(VI) (listing types of harm that may provide basis for civil action). The statute broadly defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

The loss requirement applies to each of Plaintiff's claims under the CFAA. *See* 18 U.S.C. § 1030(g); *id.* § 1030(c)(4)(A)(i)(I). EDC states that its counsel hired forensic investigators and information security consultants in response to the alleged offenses, at an aggregate cost to EDC in the last year exceeding $5,000. Compl. (Dkt. No. 1) ¶¶ 93, 98. Drawing all reasonable inferences in EDC's favor, EDC has adequately pled the loss element. Accordingly, the Court's discussion will focus on the remaining elements under each CFAA claim.

Plaintiff brings its first CFAA claim under 18 U.S.C. § 1030(a)(2)(C), alleging that Seidel accessed his work laptop after he had been fired, in order to, among other things, "continue stealing EDC's valuable proprietary information." Compl. (Dkt. 1) ¶ 97.

In order to state a claim under section 1030(a)(2)(C), a plaintiff must demonstrate that the defendant intentionally accessed a computer, either without authorization or in a manner exceeding authorized access, and thereby obtained information from any protected computer. 18 U.S.C. § 1030(a)(2)(C). The Ninth Circuit has held that "without authorization" is an "unambiguous, non-technical term that, given its plain and ordinary meaning, means accessing a protected computer without permission." *United States v. Nosal*, Nos. 14-10037, 14-10275, 2016 WL 3608752, at *1 (9th Cir. July 5, 2016). A "protected computer" under the CFAA can be a computer "used in or affecting interstate or foreign commerce," essentially any computer connected to the internet. 18 U.S.C. § 1030(e)(2)(B); *see United States v. Nosal (Nosal I)*, 676

5

F.3d 854, 859 (9th Cir. 2012) (en banc) (interpreting the interstate commerce requirement as effectively encompassing "all computers with internet access").

The actions that EDC alleges Seidel committed related to his post-termination, unauthorized use of the EDC-issued laptop, in addition to accessing the servers hosting EDC data, were for the alleged purpose of "stealing EDC's valuable proprietary information." Compl. (Dkt. No. 1) ¶¶ 96, 97(a)-(c), 101. These allegations set out the basis for a cause of action pursuant to 18 U.S.C. § 1030(a)(2)(C). Seidel's motion to dismiss EDC's complaint in this respect is DENIED.[2]

EDC brings its second CFAA claim under 18 U.S.C. § 1030(a)(4). Seidel incorrectly asserts that EDC's 18 U.S.C. § 1030(a)(4) allegation is a bare recitation of the elements of a cause of action. Mot. (Dkt. No. 18) at 9; *see* Compl. (Dkt. No. 1) ¶¶ 97(d). Section 1030(a)(4) penalizes a defendant who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access" and thereby "obtains anything of value." 18 U.S.C. § 1030(a)(4). Plaintiff has pled that Seidel accessed a protected computer without authorization, and that he did so, at least in part, to misappropriate EDC's proprietary information. Compl. (Dkt. No. 1) ¶¶ 97(a)-(d).

Seidel further argues that EDC's section 1030(a)(4) claim gives rise to the heightened pleading standard under FRCP 9(b), which EDC has failed to meet. Mot. (Dkt. 18) at 9. CFAA claims under section 1030(a)(4) must be pled with FRCP 9(b)'s specificity "only when fraudulent conduct is specifically alleged as the basis for the wrongdoing." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014). Plaintiff has alleged that Defendants engaged in wrongdoing under the CFAA, but not any patterns of fraudulent conduct. *See id.* at 833-34; Compl. (Dkt. No. 1) ¶¶ 97(a)-(d), 102. Accordingly, Seidel's motion to dismiss EDC's complaint in this respect is DENIED.

EDC brings its third through fifth CFAA claims under section 1030(a)(5). Section 1030(a)(5) splits into three subsections. Subsection A penalizes a defendant who knowingly

---

[2] EDC's 18 U.S.C. § 1030(a)(2)(B) allegation found in paragraph 103 of its complaint will be DISMISSED with leave to amend because there is no allegation that Seidel obtained "information from any department or agency of the United States[.]" *See* Compl. (Dkt. No. 1) ¶ 103. The Court suspects that this is a typographical error.

6

transmits a program, code, information, or command, intentionally causing damage without authorization. 18 U.S.C. § 1030(a)(5)(A). Subsection B penalizes a defendant who intentionally accesses a protected computer without authorization and recklessly causes damage. *Id.* § 1030(a)(5)(B). Subsection C penalizes a defendant who intentionally accesses a protected computer without authorization and causes damage and loss. *Id.* § 1030(a)(5)(C). The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Section 1030(a)(5) may apply, for example, where a disgruntled employee installs software to permanently erase valuable data, or erases such data him or herself. *See, e.g.*, *Int'l Airport Centers, LLC v. Citrin*, 440 F.3d 418 (7th Cir. 2006) (finding employee liable under CFAA, 18 U.S.C. § 1030(a)(5)(A), for installing a secure-erasure program to prevent recovery of important files prior to employee's resignation); *B&B Microscopes v. Armogida*, 532 F. Supp. 2d 744, 758 (W.D. Pa. 2007) (holding that employee violated CFAA, 18 U.S.C. § 1030(a)(5)(A) for unauthorized deletion of employer's important files).

EDC has set forth sufficient facts to state claims to relief that are plausible on their face under sections 1030(a)(5)(A)-(C). *See* Compl. (Dkt. No. 1) ¶ 99. Based on the statutory definition of damage, simply deleting emails, and nothing more, suffices as "damage" under section 1030(a)(5). Seidel's alleged targeted deletion of his EDC emails constitute a knowing or intentional "impairment to the integrity or availability of data . . . or information." 18 U.S.C. § 1030(e)(8); Compl. (Dkt. 1) ¶¶ 96-99; *see KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 903-04 (N.D. Cal. 2010) (noting, at summary judgment stage, that deletion of documents and emails, among other items, constitutes "damage" under 18 U.S.C. § 1030(a)(5)(A)); *cf. NetApp, Inc.*, 41 F. Supp. 3d at 820-21, 834 (finding insufficient pleading of "damage" under 18 U.S.C. § 1030(a)(5) where defendant allegedly only accessed proprietary information and did not damage any systems or destroy any data). Additionally, Seidel's alleged refusal to grant EDC access to certain EDC accounts after his termination could also qualify as an "impairment to the . . . availability of data." 18 U.S.C. § 1030(e)(8); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 961 (N.D. Cal. 2014); *see* Compl. (Dkt. 1) ¶¶ 82, 86. Accordingly, Seidel's motion to dismiss EDC's complaint in this respect is DENIED.

7

Finally, Seidel has not meaningfully briefed for this Court why EDC's 18 U.S.C. § 1030(a)(6)(A) allegation is inadequate. *See* Compl. (Dkt. No. 1) ¶ 100; Mot. (Dkt. No. 18) at 8-10; *see also* Compl. (Dkt. No. 1) ¶¶ 81-84 (providing further context for this cause of action). Seidel's motion to dismiss EDC's complaint in this respect is therefore DENIED.

## II. Violation of Stored Communications Act, 18 U.S.C. §§ 2701, 2707 ("SCA") (Count 2)

Seidel asserts that EDC's second cause of action pursuant to the SCA also fails *Twombly* because it is nothing more than a "regurgitation of the statutory elements[.]" Mot. (Dkt. No. 18) at 10. Seidel again claims that EDC has failed to plead with particularity this cause of action pursuant to Federal Rule of Civil Procedure 9(b). *Id.*

The Stored Communications Act generally prohibits obtaining, altering, or preventing authorized access to a wire or electronic communication held in electronic storage by either (1) intentionally accessing, without authorization, a facility through which an electronic communication service is provided; or (2) intentionally exceeding authorization to access such a facility. 18 U.S.C. § 2701(a)(1)-(2); *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1055 (N.D. Cal. 2012). With few exceptions, "any provider of electronic communication service, subscriber, or other person aggrieved" by a violation of the Stored Communications Act may bring a civil action against knowing or intentional violators of the Act. 18 U.S.C. § 2707(a).

To state a claim under the SCA, EDC must allege that Seidel intentionally accessed without authorization, or exceeded authorized access to, "a facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a)(1)-(2). An "electronic communication service" is "any service which provides to users thereof the ability to send and receive wire or electronic communications." 18 U.S.C. § 2510(15). The computer system of an email provider is an uncontroversial example of "a facility through which an electronic communication service is provided." *See In re iPhone Application Litig.*, 844 F. Supp. 2d at 1057.

The Ninth Circuit has compared an "electronic communication service" provider to a commercial storage facility leased by a customer to store sensitive documents. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072-73 (9th Cir. 2004). In *Theofel*, the court, addressing the issue of when

information is in "electronic storage," explained that

> The [Stored Communications Act] reflects Congress's judgment that users have a legitimate interest in the confidentiality of communications in electronic storage at a communications facility. Just as trespass protects those who rent space from a commercial storage facility to hold sensitive documents, the Stored Communications Act protects users whose electronic communications are in electronic storage with an ISP or other electronic communications facility.

*Id.* at 1072-73.

Plaintiff alleges that, at minimum, Seidel deleted numerous emails from the EDC web-based email system, hosted by third-party provider Rackspace, on or about the time EDC terminated Seidel. Compl. (Dkt. No. 1) ¶¶ 69, 81, 87, 111. Although EDC incorrectly states that it is a "'provider' of a 'facility' for users to use 'electronic communications services'" under the Stored Communications Act, EDC is still entitled to seek civil damages as a subscriber of such a service. Compl. (Dkt. No. 1) ¶ 112; 18 U.S.C. § 2707(a).

Furthermore, the Court is not persuaded by Seidel's argument that FRCP 9(b)'s heightened pleading standard applies here. Mot. (Dkt. No. 18) at 10. Again, Plaintiff's underlying claim is not rooted in fraud. EDC has pled facts sufficient to state a cause of action under the Stored Communications Act; accordingly, Seidel's motion to dismiss EDC's complaint in this respect is DENIED.

### III. Violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CCDAFA") (Count 3)

Seidel argues that EDC's claims under CCDAFA also fail the heightened pleading standard of FRCP 9(b) and that, in any event, EDC pleads these claims "so generally that they would fail even if Rule 9(b) [does] not apply." Mot. (Dkt. No. 18) at 11.

The CCDAFA imposes liability on any person who:

> (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.
>
> (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network [. . . ]

9

. . .

(4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network [ . . .]

. . .

(6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.

(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Penal. Code § 502(c)(1), (c)(2), (c)(4), (c)(6), (c)(7).

Seidel's motion does not address which part of EDC's complaint (and its corresponding CCDAFA statutory subsection) fails to comply with Rule 9(b)'s heightened pleading requirement, nor does Seidel's motion meaningfully address why the EDC's present complaint pursuant to the CCDAFA is insufficient under *Twombly*. Mot. (Dkt. No. 18) at 11 (devoting one paragraph to these issues). Contrary to Seidel's argument, EDC does allege the specifics of its "loss" pursuant to CCDAFA § 502(e)(1): the "expenses incurred by EDC in responding to, investigating, and remedying the problems caused by Defendants' conduct and conducting" as well as the "damaged, deleted, and destroyed data residing internal to a computer, computer system and computer network." *See* Compl. (Dkt. No. 1) ¶¶ 126, 132.

As these are the only issues Seidel raises in his motion seeking dismissal of Count 3 of EDC's complaint, this request is DENIED.

### IV. Breach of Contract (Count 4)

Seidel argues that the Court should dismiss EDC's fourth cause of action because "[t]o allege breach of contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." Mot. (Dkt. No. 18) at 11-12. In support of this assertion, Seidel cites to *Otworth v. Southern Pacific Transportation Co.*, 166 Cal. App. 3d 452 (Cal. Ct. App. 1985), which, in turn, cites a case that describes the breach of contract allegations sufficient to withstand a general demurrer pursuant to California law. *See Wise v. S. Pac. Co.*, 223 Cal. App. 2d 50, 59 (Cal. Ct. App. 1963). It is well-

10

established that state court causes of action in federal court must comply with federal pleading requirements, in this case, Federal Rule of Civil Procedure 8(a).

The elements of a cause of action for breach of contract under California law are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (Cal. 2011). EDC adequately alleges (1) that a contract existed, express or implied (Compl. (Dkt. No. 1) ¶¶ 135-136); (2) EDC's performance or excuse for nonperformance (*Id.* at ¶ 144); (3) Seidel's breach (*Id.* at ¶¶ 137-143); and (4) resulting damages to EDC. (*Id.* at ¶ 145).

EDC attaches its Employee Handbook to the complaint and incorporates the document by reference. Compl. (Dkt. No. 1) ¶ 135. Seidel seizes on this and asserts that "the Complaint fails to allege that Seidel was aware of the existence of the [Handbook], let alone ever reviewed its contents." Mot. (Dkt. No. 18) at 12. Seidel additionally asserts that EDC's "failure to attach Seidel's signature pages proves any alleged employment contract between EDC and Seidel did not include provisions of the Employee Handbook." *Id.* These are evidentiary issues that can be resolved through the course of litigation and premature for purposes of the present motion.

Seidel's motion seeking dismissal of Count 4 of EDC's complaint is DENIED.

**V.   Misappropriation of Trade Secrets, Cal. Civil Code § 3426 *et seq.* (Count 6)**

Seidel argues that the complaint does not specify the proprietary information EDC alleges constitutes a "trade secret" and that it incorrectly asserts that "[p]asswords to EDC's accounts to computer systems" can be trade secrets. Mot. (Dkt. No. 18) at 13-14.

The elements of a cause of action pursuant to the California Uniform Trade Secrets Act, Cal. Civ. Code. § 3426 *et seq.*, are: (1) that the plaintiff owned a trade secret; (2) that the defendant acquired, disclosed, or used that trade secret through improper means; and (3) that the defendant's actions harmed the plaintiff. *CytoDyn of N.M., Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (Cal. Ct. App. 2008). A trade secret is:

11

information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1.

The complaint sets forth in sufficient detail the trade secrets comprising EDC's hot water and space heating monitoring system. Compl. (Dkt. No. 1) ¶¶ 14-42, 155-156. The complaint also provides facts in support of the allegation that EDC made reasonable efforts to maintain the secrecy of its trade secrets, *id.* at ¶¶ 43-52, that Seidel misappropriated the trade secrets, *id.* at ¶¶ 83, 89, 90, 158-159, and that EDC suffered damages. *Id.* at ¶¶ 71-79, 82-83, 88-90, 93-94, 160-161. While the Court shares Seidel's skepticism as to whether computer passwords can constitute trade secrets, it need not resolve that issue at this time.

Seidel's motion seeking dismissal of Count 6 of EDC's complaint is DENIED.

## VI. Breach of Duty of Loyalty and Breach of Fiduciary Duty (Counts 7 and 8)

Seidel argues that EDC's seventh cause of action (for breach of the duty of loyalty) and eighth cause of action (for breach of fiduciary duty) should be dismissed because EDC's complaint fails to allege facts showing the existence of a fiduciary relationship. Mot. (Dkt. No. 18) at 14.

"The elements of a cause of action for breach of a duty of loyalty, by analogy to a claim for breach of fiduciary duty, are as follows: (1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (Cal. Ct. App. 2007).

The duty of loyalty arises not from a contract, but from a relationship. *Id.* The relationship of principal and agent

[a]rises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act. Where such a relationship arises, the agent assumes a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship.

*Id.* at 410-411 (internal quotations marks and citations omitted).

United States District Court
Northern District of California

1  The Court agrees with Seidel that for these two causes of action EDC must concretely allege the basis of the fiduciary relationship, not simply recite that Seidel was an "employee" of EDC, or that Seidel "had duties and performed functions equivalent to those of an officer of EDC, [such as] participating in the management of the company, [and] exercis[ing] discretionary authority," such that he "owed a fiduciary duty to EDC." *See* Compl. (Dkt No. 1) ¶¶ 164, 171.

For this reason, paragraphs 163-175 of EDC's complaint, comprising Counts 7 and 8, will be DISMISSED with leave to amend.

### VII. Intentional Interference with Contractual Relations (Count 9)

Seidel seeks to dismiss Plaintiff's claim for intentional interference with contractual relations because it is mechanically pled and fails to meet the standards of *Twombly*. Mot. (Dkt. No. 18) at 14-15. Intentional interference with contractual relations in California requires "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (Cal. 1998).

Seidel contends that EDC fails to specifically allege (1) the identity of those third parties that EDC had contractual relationships with; (2) what "false statement" Seidel allegedly made to these unnamed third parties; (3) what contracts these third parties had with EDC; (4) what contractual obligations those third parties failed to perform as a result of Seidel's alleged interference. Mot. (Dkt. No. 18) at 15.

While EDC is not required to name specific third parties at the pleading stage,[3] it must allege the existence of a valid contract or contracts, not the existence of "various third parties who have contractual relations with EDC." *See* Compl. (Dkt. No. 1) ¶ 177. The complaint also does not specify which defendant knew about which contract with "various third parties." *Id.* at ¶ 177-

---

[3] *See, e.g., Transcription Commc'ns Corp. v. John Muir Health*, 2009 WL 666943, at *10 (N.D. Cal. Mar. 13, 2009) (reasoning that the second element of this tort is satisfied even if plaintiff does not identify the specific contractual relations which have allegedly been disrupted).

13

178. Nor does the complaint specify if the "false statements to various third parties" were intentional acts, or which defendant it alleges made the false statement or statements. *Id.* at ¶ 177-178. Courts consistently conclude that "[u]ndifferentiated pleading against multiple defendants is improper." *See Corazon v. Aurora Loan Servs., LLC*, 2011 WL 1740099, at *4 (N.D. Cal. May 4, 2011); *see also Fagbohunge v. Caltrans*, 2014 WL 644008, at *3 n.4 (N.D. Cal. Feb. 19, 2014) (reasoning that a "general allegation regarding 'defendants' is [] insufficient on its face because it does not identify which specific defendants . . . Plaintiff's complaint must differentiate between each of the defendants and clearly state the factual basis for each cause of action as to each specific defendant."). EDC's complaint also does not specify an actual breach of the contractual relationship between these "various third parties." *Id.* at ¶ 178.

For these reasons, paragraphs 176-180 of EDC's complaint, comprising Count 9, will be DISMISSED with leave to amend.

## VIII. Intentional Interference with Prospective Economic Advantage (Count 10)

Seidel asserts that EDC failed to plead (1) the identity of those third parties that EDC had prospective economic relationships with; (2) what relationships those unnamed third parties had with EDC; (3) how such relationships were likely to lead to future economic benefit to EDC; or (4) what harm was caused. Mot. (Dkt. No. 18) at 15. Seidel also argues that he qualifies for a "competition privilege," and thus EDC must also plead that he engaged in conduct that was wrongful by some legal measure other than the fact of interference itself. *Id.* at 16. Finally, Seidel contends that any alleged "false statements" about his product's superior quality are mere "puffery" and not actionable. *Id.*

Intentional interference with prospective economic advantage requires that plaintiff plead and prove:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (Cal. 2003).

14

This cause of action as currently pled must be dismissed because it also suffers from undifferentiated pleading against multiple defendants. *See Corazon*, 2011 WL 1740099, at *4; *see also Fagbohunge v. Caltrans*, 2014 WL 644008, at *3 n.4. This defect aside, EDC does not need to allege the specific third parties with whom it had an economic relationship with the probability of future economic benefit. *See Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1203 (C.D. Cal. 2001) ("[I]n order to satisfy the second element of this tort under California law, the Plaintiff does not have to identify the specific contractual relations which have allegedly been disrupted.").

EDC does, however, need to specify which defendant it alleges had knowledge of the relationship, and the fact of that knowledge. *See* Compl. (Dkt. No. 1) ¶ 182. EDC must specify in its pleading whether the false statements are the "intentional acts on the part of the defendant designed to disrupt the relationship," or whether there are other intentional acts. *Id.* at ¶¶ 182-183. On this point, Seidel is correct that California's "competition privilege" requires that EDC plead and prove that Seidel engaged in conduct that was wrongful by some legal measure other than the fact of interference itself. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393 (Cal. 1995). EDC does not appear to have pled independently wrongful conduct apart from the "false statements to [] third parties," which cannot form the basis of the intentional act itself. *See Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture*, 52 Cal.App.4th 867, 881 (Cal. Ct. App. 1997) ("*Della Penna*'s requirement that a plaintiff plead and prove such wrongful conduct in order to recover for intentional interference with prospective economic advantage has resulted in a shift of burden of proof. It is now the plaintiff's burden to prove, as an element of the cause of action itself, that the defendant's conduct was independently wrongful and, therefore, was not privileged rather than the defendant's burden to prove, as an affirmative defense, that its conduct was not independently wrongful and therefore was privileged."). Finally, Seidel's "puffery" challenge is premature, as EDC shall be given leave to amend in order to specify the nature of the intentional acts on the part of Seidel (or other defendants) designed to disrupt the third party relationship.

For these reasons, paragraphs 181-185 of EDC's complaint, comprising Count 10, will be

DISMISSED with leave to amend.

**IX.	Unfair Business Practices, Cal. Bus. & Prof. Code § 17200 (Count 11)**

Finally, Seidel asks this Court to dismiss Plaintiff's claim brought under California's Unfair Competition Law. Mot. (Dkt. No. 18) at 11-12. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Accordingly, "[a]n act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007). For an action based upon an allegedly unlawful business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (Cal. 1999).

Seidel contends that this cause of action must be dismissed because equitable relief under the UCL is not appropriate where plaintiff has an adequate remedy at law. Seidel is correct.[4]

"It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (internal quotation marks and citations omitted). A UCL action "is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (Cal. 2003). While EDC has pled equitable relief in this last cause of action, the bulk of EDC's pleading demonstrates that an adequate remedy at law exists.

For this reason, paragraphs 186-192 of EDC's complaint comprising Count 11 will be DISMISSED with prejudice, because further amendment would be futile. *See, e.g.*, *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16-17 (N.D. Cal. July 7, 2015); *Durkee v. Ford Motor Co.*, 2014 WL 4352184, at *3, *9 (N.D. Cal. Sept. 2, 2014); *Rhynes v. Stryker Corp.*, 2011 WL

---

[4] Even if it were otherwise sustainable, this cause of action as currently pled would have to be dismissed because it also contains undifferentiated pleading against multiple defendants. *See Corazon,* 2011 WL 1740099, at *4; *see also Fagbohunge v. Caltrans*, 2014 WL 644008, at *3 n.4)

16

2149095, at *3-4 (N.D. Cal. May 31, 2011); *McAdam v. State Nat. Ins. Co., Inc.*, 2012 WL 4364655, at *2-3 (S.D. Cal. Sept. 24, 2012); *Stewart v. Life Ins. Co.*, 388 F. Supp. 2d 1138, 1144 (E. D. Cal. 2005).

## CONCLUSION

Seidel's motion seeking dismissal of Count 1 as to causes of action pursuant to 18 U.S.C. § 1030(a)(2)(C), 18 U.S.C. § 1030(a)(4), 18 U.S.C. § 1030(a)(5)(A)-(C), and 18 U.S.C. § 1030(a)(6)(A) will be DENIED. Seidel's motion seeking dismissal of Count 1 as to the cause of action pursuant to 18 U.S.C. § 1030(a)(2)(B) will be GRANTED, with leave to amend.

Seidel's motion seeking dismissal of Count 2 will be DENIED.

Seidel's motion seeking dismissal of Count 3 will be DENIED.

Seidel's motion seeking dismissal of Count 4 will be DENIED.

Seidel's motion seeking dismissal of Count 6 will be DENIED.

Seidel's motion seeking dismissal of Count 7 will be GRANTED, with leave to amend.

Seidel's motion seeking dismissal of Count 8 will be GRANTED, with leave to amend

Seidel's motion seeking dismissal of Count 9 will be GRANTED, with leave to amend

Seidel's motion seeking dismissal of Count 10 will be GRANTED, with leave to amend

Seidel's motion seeking dismissal of Count 11 will be GRANTED, with prejudice.

**Any amended complaint must be filed no later than <u>September 9, 2016.</u>**

**IT IS SO ORDERED**.

Dated: September 1, 2016

_____
SUSAN ILLSTON
United States District Judge