UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.D.C. TECHNOLOGIES, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JIM SEIDEL, et al.,<br><br>　　　　　Defendants. | Case No. 16-cv-03316-SI<br><br>**ORDER ON PLAINTIFF'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**<br><br>Re: Dkt. No. 55 |

Now before the Court is plaintiff E.D.C. Technologies, Inc.'s special motion to strike and dismiss defendant Jim Seidel's fourth and fifth counterclaims and defendant Seidel Associates LLC d/b/a GreenBox Energy's first through third counterclaims. Dkt. No. 55. This motion is scheduled to be heard on December 9, 2016. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court will DENY plaintiff's motion to strike and DENY plaintiff's motion to dismiss.

**BACKGROUND**

Plaintiff E.D.C. Technologies, Inc. ("EDC") is the creator of an internet-based hot water management system that allows customers to remotely monitor, configure, and actively manage their hot water systems. *See* First Amend. Compl. ("FAC") (Dkt. No. 33) ¶¶ 16, 18. Defendant Jim Seidel is EDC's former Vice President of Sales and Marketing. *Id*. ¶¶ 1, 5. Defendant Seidel

1  Associates, LLC d/b/a GreenBox Energy ("GreenBox") is a competing business Seidel allegedly
2  created while employed by EDC. *Id.* ¶¶ 8-9, 79. Defendant Jason Pavlos is EDC's former lead
3  operations technician. *Id*. ¶¶ 6, 58.

4  EDC alleges that, while still employed with the company, Seidel and Pavlos developed
5  GreenBox using EDC's technology and resources. *Id*. ¶ 85. EDC alleges that Seidel and Pavlos
6  met with EDC customers and used EDC products to demonstrate service features the two were
7  developing in competition with EDC. *Id*. EDC alleges that it fired both Seidel and Pavlos when
8  the company learned of these, and other, actions. *Id.* ¶¶ 82, 86.

9  In this lawsuit, EDC sues Seidel, Seidel Associates, GreenBox, and Pavlos, alleging
10  federal question jurisdiction pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030,
11  and the Stored Communications Act, 18 U.S.C. §§ 2701, 2707 (Counts 1-2). EDC also brings
12  various California state law causes of action (Counts 3-10), including claims for intentional
13  interference with contractual relations and intentional interference with prospective economic
14  advantage.

15  Seidel and GreenBox each assert counterclaims against EDC. *See* Dkt. Nos. 39, 40.
16  According to Seidel and GreenBox, Seidel voluntarily resigned from EDC and sought to "develop
17  a revolutionary new product[,]. . . . a completely different control and monitoring system from
18  EDC's . . . ." GreenBox Countercl. (Dkt. No. 39) ¶ 7. Seidel maintains that he did not steal or use
19  any of EDC's proprietary information and that GreenBox developed its unique product in
20  collaboration with a third-party. *Id.* ¶¶ 8-10. Seidel and GreenBox claim that they never
21  contacted or pursued EDC customers; they allegedly only work with two former EDC customers,
22  and only because these customers contacted Seidel directly when EDC was unable to meet their
23  product requests. *Id.* ¶¶ 13-14.

24  In July 2016, EDC management sent various emails to current and prospective EDC
25  customers, contractors, and developers, describing certain factual allegations in this lawsuit in an
26  apparent effort to prevent losing business. *See id.* ¶ 17; Decl. Wathen (Dkt. No. 55-1), Exs. A-D.
27  Seidel and GreenBox allege that EDC knowingly included false information in these emails —
28  such as the fact that Seidel was terminated (he claims to have resigned), that Seidel was an EDC

shareholder (he claims that he was not), and that Seidel stole EDC trade secrets and customers (he claims that he did not); and they bring causes of action arising from the false communications. GreenBox Countercl. ¶¶ 17-43; Seidel Countercl. ¶¶ 64-79. EDC makes the instant motion to strike and dismiss the Seidel and GreenBox counterclaims that arise from the customer emails: (1) Seidel's fourth counterclaim for defamation; (2) Seidel's fifth counterclaim for intentional interference with prospective economic advantage; (3) GreenBox's first counterclaim for intentional interference with contractual relations; (4) GreenBox's second counterclaim for intentional interference with prospective economic advantage; and (5) GreenBox's third counterclaim for trade libel. *See* Mot. (Dkt. No. 55).

## LEGAL STANDARD

### I.   Anti-SLAPP (Cal. Civ. Proc. Code § 425.16)

The California Legislature passed California Civil Procedure Code section 425.16 to address "a disturbing increase" in Strategic Lawsuits Against Public Participation ("SLAPPs"), or suits brought "primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a). Section 425.16 permits defendants (or counterclaim defendants) to bring a "special motion to strike" if a cause of action against them arises "from any act . . . in furtherance of the person's right of petition or free speech . . . in connection with a public issue[.]" *Id.* § 425.16(b)(1), (h). A special motion to strike under section 425.16 is commonly referred to as an anti-SLAPP motion.

In order to prevail on an anti-SLAPP motion, the movant must first make a *prima facie* showing, through the pleadings themselves and supporting affidavits, that the statement or conduct underlying the legal claims against it qualifies for protection under the anti-SLAPP statute. *Id.* § 425.16(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). The burden then shifts to the non-moving party to demonstrate a probability of prevailing on the challenged claims. Cal. Civ. Proc. Code § 425.16(b)(1); *Vess*, 317 F.3d at 1110.

The California Legislature expressly intended that section 425.16 "be construed broadly" in protection of the public interest. Cal. Civ. Proc. Code § 425.16(a). Although it is a state

1  statute, a party may bring an anti-SLAPP motion to strike state law claims in federal court. *Vess*, 317 F.3d at 1109 (citing *United States ex. rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999) (holding that there is no direct conflict between the Federal Rules and §§ 425.16(b) and (c), and that adopting California procedural rules serves the purposes of the *Erie* doctrine)).

**II.    Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether plaintiff has stated a claim upon which relief can be granted, the court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The court, for example, need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Furthermore, "a plaintiff may plead h[im]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (citation and internal quotation marks omitted).

As a general rule, the court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). However, the court may consider "documents attached to the complaint [and] documents

1  incorporated by reference in the complaint . . . without converting the motion to dismiss into a
2  motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  If
3  the court dismisses the complaint, it must then decide whether to grant leave to amend.  The Ninth
4  Circuit has "repeatedly held that a district court should grant leave to amend even if no request to
5  amend the pleading was made, unless it determines that the pleading could not possibly be cured
6  by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations
7  and internal quotation marks omitted).

## DISCUSSION

### I. Anti-SLAPP Motion

California's anti-SLAPP statute establishes four categories of protected speech or conduct. Cal. Civ. Proc. Code § 425.16(e).  The statute protects: (1) "any written or oral statement or writing made before a legislative, executive, or judicial proceeding"; (2) "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body"; (3) written or oral statements made "in a public forum in connection with an issue of public interest"; and (4) any other conduct furthering a right of petition or free speech in connection with a public issue. *Id.*

Here, EDC argues that its emails are protected speech under the second category as written statements "made in connection with an issue under consideration or review by a . . . judicial body." Mot. (Dkt. No. 55) at 12, 15; Cal. Civ. Proc. Code § 425.16(e)(2).  The Court must first determine whether EDC's communications are entitled to protection under the anti-SLAPP statute. If so, the Court must then determine whether Seidel and GreenBox have demonstrated a likelihood of success on the merits of the counterclaims arising out of those protected communications.

#### A. Protected Communications

First, EDC must demonstrate that the challenged statements were made "in connection with" an issue under consideration by a judicial body.  EDC argues that its emails to customers are protected communications because they were made "in connection with issues under consideration

in this litigation."[1] Mot. (Dkt. No. 55) at 14-15.

Seidel and GreenBox do not disagree with this interpretation but counter that the emails fall under the "commercial speech" exemption codified under California Civil Procedure Code section 425.17 and are therefore not entitled to anti-SLAPP protection. Opp'n (Dkt. No. 60) at 5-8. The California Legislature created certain exemptions from the protections afforded under the anti-SLAPP statute because of a "disturbing abuse" of the statute "contrary to the [statute's] purpose and intent." *See* Cal. Civ. Proc. Code § 425.17(a). One such exemption is for "commercial speech." *Id.* § 425.17(c). California courts have interpreted the exemption as applying to "disputes that are purely commercial[,]" such as suits arising from comparative advertising. *Taheri Law Grp. v. Evans*, 160 Cal. App. 4th 482, 491 (2d Dist. 2008). "The commercial speech exemption . . . is a statutory exception to section 425.16 and should be narrowly construed." *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, 22 (2010) (citations and internal quotation marks omitted).

On its face, the "commercial speech" exemption states, in relevant part, that anti-SLAPP protection "does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . arising from any statement or conduct by that person" if two conditions exist. Cal. Civ. Proc. Code § 425.17(c). The first condition is whether the statement or conduct "consists of representations of fact about [the defendant's] or a business competitor's business operations, goods, or services," "made for the purpose of obtaining approval for, promoting, or securing sales or leases of . . . the [defendant's] goods or services . . . ." *Id.* § 425.17(c)(1). The second condition is whether "[t]he intended audience is an actual or potential buyer or customer . . . ." *Id.* § 425.17(c)(2). Thus, for the commercial speech exemption to apply, Seidel and GreenBox must demonstrate: (1) that EDC is "primarily engaged in the business of selling or leasing goods or services"; (2) that the challenged claims arise "from a

---

[1] "[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1266 (2008); *see also id.* at 1270 ("[S]ection 425.16, subdivision (e)(2) . . . has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation." [citations]).

1    statement or conduct by [EDC] consisting of representations of fact about [EDC's] or a business
2    competitor's business operations, goods, or services"; (3) that EDC's statement was made "for the
3    purpose of obtaining approval for, promoting, or securing sales or leases of" its goods or services;
4    and (4) that EDC's intended audience was "an actual or potential buyer or customer[.]"  *See*
5    *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033,
6    1036-37 (S.D. Cal. 2011) (citing *Simpson*, 49 Cal. 4th at 30).

7        EDC does not dispute that it is engaged in business or that its intended audience was,
8    among others, actual or potential customers.  EDC argues, at least with respect to Seidel, that its
9    statements did not concern "a business competitor's business operations, goods, or services."
10   EDC also argues that the emails were not sent "for the purpose of obtaining approval for,
11   promoting, or securing sales or leases of" its goods or services.  The Court will address these
12   arguments in turn.

13       First, the Court is not persuaded by EDC's distinction between GreenBox, the entity, and
14   Jim Seidel, the person, in terms of who is EDC's "business competitor."  The commercial speech
15   exemption applies equally to representations of fact about either the defendant's or "a business
16   competitor's business operations, goods, or services."  Cal. Civ. Proc. Code § 425.17(c)(1).
17   EDC's email contained representations of fact about its own operations, goods, or services, as well
18   as GreenBox's.  Regardless, under these circumstances, common sense dictates that Seidel and
19   GreenBox are both EDC competitors — Seidel created GreenBox, an EDC competitor, and
20   manages its day-to-day operations.  *See* Seidel Countercl. (Dkt. No. 40) ¶ 25.  This is a dispute
21   between competing businesses.  That one defendant, Seidel, is not a business entity, does not
22   detract from the commercial nature of this dispute.  The Court finds that for purposes of the
23   commercial speech exemption, EDC's communication contained representations of fact about
24   both EDC's and "a business competitor's business operations, goods, or services."

25       Second, the Court finds that EDC's email was sent "for the purpose of obtaining approval
26   for, promoting, or securing sales or leases of" its goods or services.  For example, in *Weiland*, the
27   plaintiff moved to strike counterclaims arising from a press release and oral statements related to
28   its patent infringement suit against the defendant.  814 F. Supp. 2d at 1037-39.  The plaintiff's

7

press release was broadly disseminated to customers, vendors, and trade publications, and included discussion of the litigation, the plaintiff's innovative products, and a comparison of the plaintiff's and the defendant's products. *Id.* at 1037. The release and related oral statements also indicated that dealers who sold the defendant's products could be subject to liability. *Id.* While the statement directly discussed the parties' litigation, the court found that the plaintiff's statements were made "for the purpose of securing sales." *Id.* at 1038-39.

Here, while EDC's emails were more carefully drafted and less commercial than the press release in *Weiland*, the Court cannot ignore the emails' inherently commercial elements. For instance, the emails address recipients as "valued EDC customer[s]" and state that recipients "can make [their] own judgment about what to believe and with whom to do business." Decl. Wathen, Ex. A. The emails state that "EDC will continue to provide its customers with the latest in hot water control technology and the best possible service," and enclose "[a] copy of EDC's latest sales literature." *Id.* EDC's emails were undoubtedly written to "reassure customers" and "to dispel confusion" as EDC suggests, Decl. Wathen ¶ 4, but the purpose of doing so was to retain customers, generate business, and secure sales. In this context, EDC's emails served as a unique marketing opportunity. The commercial speech exemption was created precisely to keep such "purely commercial" disputes from being stricken by the anti-SLAPP statute. *See Taheri*, 160 Cal. App. 4th at 491 (citations omitted); *see also JAMS, Inc. v. Superior Court*, 1 Cal. App. 5th 984, 995 (4th Dist. 2016) ("What matters . . . is whether the speech at issue is about the speaker's product or service or about a competitor's product or service, whether the speech is intended to induce a commercial transaction, and whether the intended audience includes an actual or potential buyer . . . ."). The Court finds that EDC's communication is exempted from anti-SLAPP protection by the commercial speech exemption, Cal. Civ. Proc. Code § 425.17(c). Accordingly, EDC's special motion to strike is DENIED.[2]

---

[2] Because the Court denies EDC's motion to strike, EDC is not entitled to its attorneys' fees and costs for this motion. Seidel and GreenBox may not recover fees and costs either, because EDC's motion was not "frivolous" or "solely intended to cause unnecessary delay." *See* Cal. Civ. Proc. Code § 425.16(c)(1).

8

### B. Probability of Prevailing

Because EDC's communications are commercial speech, and not entitled to anti-SLAPP protection, Seidel and GreenBox need not demonstrate "a probability that [they] will prevail on" their counterclaims. Cal. Civ. Proc. Code § 425.16(b)(1). The Court will now address EDC's alternative motion to dismiss the same counterclaims under Federal Rule of Civil Procedure 12(b)(6).

## II. Motion to Dismiss

EDC argues that because its customer emails are protected by California's litigation privilege, Seidel and GreenBox cannot bring any tort claims based on the emails. Accordingly, EDC argues that Seidel and GreenBox cannot prevail on any of the five counterclaims at issue because all five are based on EDC's privileged communications.

The litigation privilege, California Civil Code section 47(b), "protects participants in judicial proceedings from derivative tort actions based on communications in or regarding the judicial proceeding." *eCash Techs., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1082 (C.D. Cal. 2000), *aff'd*, 35 F. App'x 498 (9th Cir. 2002). The privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 955 (2007) (citation and internal quotation marks omitted). "[The] privilege has been given an 'expansive reach' by California courts . . . ." *eCash Techs.*, 127 F. Supp. 2d at 1082 (citing *Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993)). It "bars all tort causes of action except malicious prosecution," *Jacob B.*, 40 Cal. 4th at 960, and applies to communicative acts "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.* at 955.

For the privilege to attach, it is not necessary that the challenged communication "be relevant or material to an issue before the tribunal but need only have some proper connection or relation to the proceeding and in achieving its objectives." *Costa v. Superior Court*, 157 Cal. App.

9

3d 673 (1st Dist. 1984) (citations and internal quotation marks omitted). Moreover, "[t]he litigation privilege can apply to out-of-court statements 'to nonparties who have a substantial interest in the outcome of the pending litigation.'" *Weiland*, 814 F. Supp. 2d at 1040 (quoting *Castaline v. Aaron Mueller Arts*, No. 09-2543, 2010 WL 583944, at *4 (N.D. Cal. Feb. 15, 2010)); *see also Costa*, 157 Cal. App. 3d at 678 (collecting authority). "Any doubt as to whether such relationship or connection exist[s] must be resolved in favor of a finding of privilege." *Costa*, 157 Cal. App. 3d at 678 (citations omitted); *accord Adams v. Superior Court*, 2 Cal. App 4th 521, 529 (6th Dist. 1992) ("Any doubt as to whether the privilege applies is resolved in favor of applying it." [citations]).

The communications at issue here were directly related to this judicial proceeding. The emails served to inform EDC customers, potential customers, contractors, and developers as to the pending litigation and some of the factual allegations in this case. However, the parties dispute whether the nonparty recipients of EDC's emails had the necessary "substantial interest" in the outcome of this case to bring the communications within the litigation privilege.

The litigation privilege exists because of its "critical role . . . in promoting free access to the courts and in shielding counsel, his or her client and witnesses from having their motives questioned and being subjected to litigation if some connection between [a communication] and the judicial inquiry can be established." *Abraham v. Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796, 813 (2d Dist. 1990) (citation and internal quotation marks omitted); *see also O'Neil v. Cunningham*, 118 Cal. App. 3d 466, 474 (1st Dist. 1981) ("The contrast between [the two earliest versions] of section 47 . . . is so striking as to suggest that the Legislature intended to insulate from any liability in defamation anybody who, in a judicial proceeding, said or wrote anything about anybody."). Courts have both broadened and placed certain limitations on the privilege over the years. The privilege now includes "publication[s] to nonparties with a substantial interest in the proceeding[s]," but stops short of protecting statements made to the general public. *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 153 (2d Dist. 2013) (citations and internal quotation marks omitted) ("[T]he expansion [of the litigation privilege] does not encompass publication to the general public through the press."); *see also Abraham*, 217 Cal. App. at 811-18 (discussing

legislative evolution and judicial interpretation of litigation privilege).

In *Abraham*, the California Court of Appeal held that communications related to federal antitrust and other allegations against a hospital administrator, made within the hospital's local community, were privileged. 217 Cal. App. 3d at 823. The court held that the local community had a "substantial interest in the outcome of the pending litigation" and were therefore "participants" therein. *Id.* In *Weiland*, which involved alleged patent infringement, a federal district court held that a press release sent to a company's customers, vendors, and certain trade publications was sent to "parties with substantial interest in the outcome" of the litigation. 814 F. Supp. 2d at 1041. The court stated that the recipients had a substantial interest because some already had economic relationships with the defendant, as buyers of the defendant's goods, and that both past customers and potential future customers would have an interest in patent infringement claims against the defendant's products, as they could face infringement liability for downstream sales. *Id.*

In *Neville*, an employer fired an employee based on allegations that the employee had stolen customer lists and solicited the employer's customers to start a competing business. 160 Cal. App. 4th at 1259. Before commencing litigation against the employee, the plaintiff's lawyer wrote to the plaintiff's current and past customers, accusing the former employee of breach of contract and misappropriation of trade secrets, and suggested that the customers not do business with the former employee "to avoid potential involvement in any ensuing litigation 'as a material witness, or otherwise.'" *Id.* The employee commenced a defamation action against his employer based on the letter, and the employer moved to strike under the anti-SLAPP statute. *Id.* Because "[t]he reasonable relevancy requirement of [the litigation privilege] is analogous to the 'in connection with' [litigation] standard of [the anti-SLAPP statute]," *id.* at 1266, the Court of Appeal looked to California's litigation privilege as an aid in determining whether the statement was made "in connection with" litigation, and thus protected under the anti-SLAPP statute. *Id.* at 1263, 1266-68. After discussing the litigation privilege in dictum, the court affirmed the trial court's order striking the employee's defamation claim because the letter was a protected communication under the anti-SLAPP statute. *Id.* at 1270-71.

11

Here, EDC's emails addressed current, former, and potential future customers, as well as contractors and developers. Decl. Wathen ¶ 4. In some instances, EDC appears to have attached a copy of the complaint from this case. *See* Decl. Wathen, Exs. B-D. The communications sought, in part, to resolve confusion among EDC customers as to EDC's relationship with Seidel and EDC's health as a business. Decl. Wathen ¶ 4. The emails were certainly related to EDC's claims for breach of contract, trade secret misappropriation, intentional interference with contractual relations, and intentional interference with prospective economic advantage. The Court is not convinced, however, that the communications were addressed to nonparties with a "substantial interest" in this litigation, such as might confer an absolute privilege against claims arising from EDC's emails. EDC distributed the communications broadly, including to many recipients who likely did not know, or care to know, about this litigation. EDC's distribution was not limited to current customers, parties who might themselves face liability, or parties who might provide evidence or act as witnesses in this dispute, nor were the communications limited to a particular community with an obvious "substantial interest" in the case. EDC's distribution of the complaint, as a stand-alone matter, would be privileged, but the customer emails were not so limited, and the Court is not prepared to extend California's litigation privilege to immunize the communications in this case. Accordingly, the Court finds that California's litigation privilege, Cal. Civ. Code § 47, does not bar Seidel and GreenBox's counterclaims.

EDC has raised no additional arguments as to the sufficiency of Seidel and GreenBox's counterclaims. As such, the Court DENIES EDC's motion to dismiss Seidel's fourth and fifth counterclaims and GreenBox's first, second, and third counterclaims.

## CONCLUSION

EDC's anti-SLAPP motion fails because the communications at issue are "commercial speech" and exempted from anti-SLAPP protection. Furthermore, the communications are not protected by California's litigation privilege because they were not sent to parties with a "substantial interest" in this litigation. Accordingly, the Court DENIES EDC's motion to strike and its motion to dismiss Seidel's fourth and fifth counterclaims and GreenBox's first, second, and

12

1  third counterclaims.  Neither party is entitled to its fees and costs under the anti-SLAPP statute.

3  This order resolves Dkt. No. 55.

5  **IT IS SO ORDERED**.

6  Dated:  December 6, 2016

SUSAN ILLSTON
United States District Judge